Good morning. May it please the Court, I'm Dominic Dre and I represent the appellant JustAnswer. I will try to save three minutes for rebuttal. This case is about reasonable Internet users and the holistic standard for agreeing to website terms and conditions. Reasonable Internet users would know that the payment pages in this case include assent to JustAnswer's terms and conditions. Yet take a look at the two payment pages on page 18 of the opening brief. The district court found one of those enforceable and the other one not. And which one? Can you just distinguish between which one was which? Well, Your Honor, that's more or less my point. If you showed those two pages Well, we don't have your brief. I don't have your brief in front of me. I've got the names of the plaintiffs, so if you could pull that Great. So Pettit, which is ER 118 if you're looking at the excerpts I'm not looking at the excerpts. Pettit's pretty easy. Pettit says by clicking confirm now. That's what the other ones don't say. Correct. Your point's well taken, which is, I don't know that that makes any sense, but we said in Berman you need by clicking. So I don't think the district court made a mistake there. So I don't think the court said you need by clicking or that you need any element. It's a holistic standard. That's been the case for, you know, Oberstein, Berman, Chiffon. Well, I mean, Berman said you have to explicitly be, in the second prong, you have to explicitly be advised that the act of clicking will constitute assent. And I think the district court's reading that statement to say, I agree, look, bear in mind I agree with your underlying position. I just don't think we can go there under Berman because if it just says I agree, that doesn't necessarily explicitly advise that when you click on it. Well, Your Honor, then let me give you some solace in the form of KIBAH, which postdates the decision below. And so the district court didn't have the benefit of that. For those who are looking at the opening brief, that website's on page 27. It does not have the by clicking language. Which, and can you give me the plaintiff? KIBAH. No, no, no, no. I'm sorry. The plaintiff in this case, not the plaintiff. You're talking about the agreement in KIBAH. This court's precedent in KIBAH answers the question about whether by clicking is a magic word's hard and fast requirement. It is not. So which plaintiffs in this case, Godin, Faust, and McDowell, are the three that are depicted on page 18, where I raise the question, and I think it answers itself. If you show those different web pages to reasonable Internet users and ask them which was enforced and which one wasn't, they won't be able to know because the holistic standard makes clear. Let's back up because unfortunately you're not arguing on a blank slate. You've got the seller's opinion from the California Court of Appeals. As I read Davis, Davis seems exactly like Sellers, and Sellers was addressing your client, right? Yes. Yeah. So Davis is the one plaintiff who saw a payment page that's similar to Sellers. Right. Now, Sellers doesn't apply here because Sellers is an automatic renewal law precedent. Aren't the parties here all raising ARL claims? I thought they were all. And the district or the parties agreed that California law applied. So if we apply Sellers to all of your, all of the claimants here, all of the petitioners here, then that says there wasn't enough. That gets right to the nub of the Sellers question, Your Honor, but there are a couple of points to bear in mind. One, only Godin is a California resident. But does that matter? Because you all agreed that California law applies. And then two, on page 12 is the court statement where it says all parties agree that California contract formation law applies because the law is materially the same in New York, Florida, North Carolina, and California. That cannot be talking about the ARL. That is talking about standard contract formation because those other states have their own ARLs. And Davis, Your Honor points to Davis as the one who's like the Sellers website. Davis is from North Carolina. North Carolina has an automatic renewal law, which is pled in the complaint. And it does, for example, it differs substantively from California's. So, Counsel, I guess I keep coming back because I agree with you. I think Sellers framed this up incorrectly, but it framed it up under California law. It seemed to extend it beyond the argument that you're making, which I'm sympathetic to, and just say, no, rightly or wrongly, this is how a contract is formed. I don't think Sellers says that, but the good news is there's subsequent precedent, BD versus Blizzard, which I had the privilege of arguing in the California Court of Appeal, limited its application. This court then picked that up in Kibah. I'll give you the citation. BD clarified the extent of Sellers. And here's Kibah at pages 10, 18 through 19. Quote, the foremost consideration in Sellers was the clear and conspicuous notice requirement of the ARL, which is inapplicable here. It is inapplicable here as well. Didn't the parties agree that it was applicable? I mean, the parties agreed that California contract formation law applied. The standard contract formation law, Your Honor. That's absolutely right. They couldn't possibly agree that substantive provisions like the ARL applied, because these other states where plaintiffs, specifically Davis, which is all the action around Sellers concerns Davis. Davis is the only one who saw something that's factually similar to Sellers. So why is Davis, the payments page of Davis, that Davis saw, why is that conspicuous? Oh, so yeah, if we get past the California heightened standard for the ARL, that page actually includes the by-clicking language that the court was asking about earlier. Yeah, but hold on. Back up. You have to have a magnifying glass in order to see. I mean, I think you're mixing up the prongs, because the by-clicking goes to the second prong. It does work for both, I think. Well, not really. I mean, the second prong is all about explicitly advised that clicking will do this. You may satisfy that, but if you can't read it, then that goes to the conspicuous prong. And I don't see any difference. Look, Davis doesn't seem to be your strongest case. No, certainly not. In fact, the fact that we're talking about Davis is great news for me, because the other ones are all so straightforward. No, I, well, you choose to argue how you want. But I guess the question is, maybe it would be better, assuming we thought Davis did fall within Sellers, whatever the rule is, Sellers, however far it should go. Nelson, I mean... Nelson is Kebaugh. The page in Nelson is Kebaugh. Because why? Because of the placement of the notice beneath the action button. Well, but it's still, it's still, you've got language between the button. That's okay. The other ones, you don't have this try seven days, and it kicks it down to the bottom. I don't know if that matters, but that seemed to matter in Sellers. Again, Sellers is doing a different statute, Your Honor. If the court were, let me just close the loop on Sellers. You want us not to apply Sellers, and that's a hard argument. No, respectfully, I don't think that's true. Sellers doesn't focus solely on the ARL. It does in certain places, and other places. It's talking about general rules and contract formation. So we're here on a motion to compel arbitration. So the only provision in the terms and conditions at issue is the arbitration provision. Right, but if there's... Not the automatic renewal. It doesn't matter, because if there's no contract, then we don't get to the arbitration clause. No, Your Honor. And this is the point where my friends on the other side are very tactful. If there was a rule in California that said, we won't enforce an arbitration provision unless there's this heightened standard met... Unless there's a contract. ...it runs straight into preemption. I mean, we have cases that say... That's AT&T. We have cases that say, if the contract is informed... I think it's Norcia or something like that. If the contract is informed, then we don't look at the arbitration clause, because there's no contract. So Sellers seems to be pointed at, is there a contract or no contract? That's not right. What Sellers says is you can't enter an automatic renewal provision without these various heightened standards. But it ultimately said there wasn't a contract. And I guess this is where... It couldn't be saying that without running into federal preemption. Well, I think I'm agreeing with you, but that's what it says. Like, I think Sellers is just wrong. I think it's wrong. But that's not... We don't get a second guess whether the state law misread the law or not. We have to take it. That's not true when there's a constitutional avoidance question, first of all. Secondly, BD and KIBAH get you out of that bind, because KIBAH also involves... By the way, I don't think it would be preempted. I mean, whatever Sellers is doing, it's talking about contract formation. Right. So that's not preempted. That point is... And what the parties here stipulate to is plain vanilla contract formation, because, as I pointed out, the language at ER 12 where the court says that is in the context of an agreement that the law is substantively the same. It's just not true for the heightened notice requirement under California ARL. That can't be what the court is talking about. The phrase, terms of service, needs to be conspicuous in the first part of the general test that we look at. So if you're looking at Nelson, how is it... What's the argument that that's conspicuous? Yes. So the terms of service is title capitalized, underlined, in close proximity to the action button, on a page where you enter your credit card information. Anybody who shops on the Internet... And here the Second Circuit's decision in Meyer v. Uber is relevant, where they talk about the reasonable user, the reasonable Internet consumer. It's not someone making their first purchase on the Internet. It's somebody who does this regularly, who understands how these websites work. Here you have, considering just Nelson now, here you have a website that points out, for $5 you get your answer, that's a seven-day trial, then it renews, the start my trial by clicking start my trial. All of this is very obvious to a normal, reasonable Internet user. And, in fact, I hardly even need to make the point because in the court's decision in Keebaugh, which, again, intervenes between the district court's decision here and this one... Which is sort of irrelevant because we're bound by Sellers. I mean Sellers is exactly the same as or very close to Nelson. That's Davis. To Davis. Sellers is Davis, yes. But also it's very similar to Nelson. Both say start my trial. Both say try seven days for $5. Both have the tiny type that says by clicking. I mean they're very similar. I understand the desire to make small distinctions, but... Well, unfortunately, I mean, that's the nature of the holistic test. And the holistic test in this case... They're very similar. Parts of them are similar, Your Honor. Parts are different. And they have to be considered, you know, in toto. So a reasonable user would definitely recognize them. The district court said that the Gooden payment page and the Nelson payment page were essentially identical, and he said they both fail. But if you look at Gooden, or however you say the name... I'm not sure. It is different than Nelson. Oh, Gooden, Faust, and McDowell I think are layups, especially in light of the decision on Pettit and this court's intervening. Nothing's a layup in this area, counsel. Well, if Pettit was right and the other side hasn't appealed, hasn't cross-appealed Pettit, those are indistinguishable. In fact, I dare say... You know, what I found interesting, in fact I kind of chuckled when I saw it, is the checkmark, the blue little box is already checked. The checkmark is one of the... I mean... The checkmark is the reason I think those are even easier. I don't consider myself a very sophisticated Internet shopper or anything, but, you know, usually you have to check it. Oh, so that is actually... That's a feature, not a bug. The checkmark is... In fact, that would even satisfy the ARL. I like it. Because it calls your eye to that. Uncheck it? If you look at it. No. And that's important. No, no, that's important, because the thing you can do is either click the action button or not. It's not an option to opt out of the terms and conditions. You are either buying the thing or you're not. No, look, I'm sensitive to what you say. So help me understand, because I was trying to make sense of how the district court distinguished Pettit as well, and it seems to me that the district court, right or wrong, said Pettit has, by clicking, I agree. So it seemed to say that that was conspicuous enough. Well, clearly it was conspicuous enough or it wouldn't have bound her to it. And to your point, I don't understand the difference, and I guess we'll ask opposing counsel, what's the difference between the conspicuousness between Pettit, McDowell, Faust? Your guess is as good as mine. And Pettit isn't on appeal. Pettit is not cross-appealed, correct.  Do you want to save some time? Yes, thank you. Okay, of course. May it please the Court, Mark Segma for the Plaintiffs, and let me jump right in. First off, Sellers is clearly on point legally. We pointed out in our brief the many reasons why that was true, and their reply brief really doesn't rejoin any of that. And Sellers itself explicitly said it wasn't limited to that. This Court has applied it since then in cases that did not apply the automatic renewal law, like Berman and Oberstein. In those cases, it wasn't even counted. So let's accept that that's true. Nelson, the only one that seems to fall directly under Sellers is Davis. I would say Nelson, too. Okay, Nelson might. But this is the problem. I mean, we're looking at these and we're like, well, here's differences. But, okay, so let's say Nelson falls within it. Goodun, Faust, and McDowell don't seem to fall within Sellers. I agree that they won't fall directly into it, which is why the District Court didn't even claim that, right? Well, I thought it did claim Goodun fell within Sellers. No, it claimed and properly noted that Davis and Nelson were directly controlled by Sellers. But about the other three, it cited Sellers, but it applied mostly and relied on Berman and Oberstein. So is it true that Berman, I mean, because if you go that route, then the only difference between Pettit, which I understand is not on appeal here, but Pettit said by clicking you confirm this, and the others said I agree. No, no, three differences. There's that one, and that's key. The other one the Court relied on a lot, which they downplay to an incredible degree, is the blue link. Look at Pettit. Pettit, there's a link that's blue, and it pops right out. I've got to be honest. I think the law is crazy if we say you have to have it in a blue link or it's not. It doesn't have to be blue. It could be green. It could be contrasting. No, I think any color. I don't understand that argument. I don't understand that argument, and I don't even think that that's where I'm worried. I mean, I agree that the District Court said that, but that's almost where I'm tempted to clean up the District Court a little bit because that can't be the law. I think all the cases have held that contrast is key. I'm not saying it's dispositive, and neither did the Court below. If the Court wants to highlight and reiterate and make clear that contrast is key and that blue font isn't required or not even green and that it's holistic, I think the Court can do that. I don't think that changes the result here. I mean, I'm a little bit younger. I do consider myself an internecine. Okay, so let's take out the hyper. So you said there were three. There was by clicking this you agree. Well, by clicking versus I agree. There's the color of the hyper link. What's the third one? So the third is something that, respectfully, I believe Just Answer misstates, which is the context. So the courts have held that the context of the transaction matters, and specifically whether it's a one-off or whether it's a repeat business. Now, Just Answer says continuously in its brief that this was a repeat business case. That is flatly false. As this Court held in Oberstein, which Judge Acuda was on that panel, you can read that. In Oberstein, this Court looks at sellers and says, okay, let's look at sellers. In that case, they paid $5 to get an answer to a question and sign up for a free trial, but they didn't think that they were signing up for an automatic renewal. That is, in fact, why they sued in the first place. And so Oberstein characterizes what happened in sellers and what happened here as a one-off. And that's exactly what happened. The entire reason my clients were suing is because they got hoodwinked when they signed up for something. How can that be true? McDowell says, I understand this membership renews automatically. I'm not as familiar with what the other one said. Faust says, I understand this membership renews automatically. Goodwin says, I understand this membership renews automatically and will continue until canceled. And they all made ARL claims. And so one question is sellers says, well, for an ARL claim or contract that includes a renewal provision, there is heightened conspicuousness. Is this beyond reasonable? Is it clear and conspicuous? Opposing counsel says it was only focusing on sellers and California ARL is not applied to the other pages. What is correct? Are we banned by sellers because the parties agree California law applied? Or does California apply only not ARL claims? No, I mean, sellers itself was not limited to the ARL. It specifically said we're applying the general federal law. The other cases that have applied sellers have not. Wait, wait, wait. General federal law. I'm sorry. Yeah, because it's state contract law. California law, of course. And defining as a matter of California state law when a contract was formed, which creates no issues or preemption or anything else, because it's just a matter of California law and it controls. And it says in California, a contract was formed when these things happened. What I'm saying is, is that sellers itself specifically did not limit itself to just the cases where there was an ARL. And then this Court has applied sellers many times since. And even in Blizzard and Keebaugh and those other cases, this Court still applied sellers. It just distinguished it based on the context. It never said that seller, no one has said that sellers only applies in cases where there's an ARL. Second, the California people here did make ARL claims. Third, the non-California people here also made their state law equivalence of ARL because this entire case is about people getting hoodwinked to signing up for an automatic renewal. So here's where opposing counsel says, so with due respect to your three distinguishing factors, the only one that really has a lot of resonance to me is the difference between by clicking versus I agree. Opposing counsel says Berman did not require that as a dispositive distinction. What's your response to that? I agree that nothing is dispositive. And so I don't think that is a dispositive distinction. Well, then, if that's correct and I disagree on two of the three factors, don't I have to remand it back to the District Court and say, you can't rely on blue versus black hyperlinks. You've got to look at, you know, make a decision or maybe not even remand it. Just say by clicking versus I agree just isn't a difference. Why? I mean, respectfully, I do think that, of course, I think that the by clicking, you agree, is a distinguishing factor. Why? Why? Help me understand that. I mean, for the reasons that Your Honor mentioned in opposing counsel's argument and the fact that the button itself says confirm now as opposed to start my trial. How does that make any sense? If I'm reading this, take this out of the Internet context. You hand me a contract. The contract says I agree that I'm bound by the terms and conditions and I sign it. No one would question whether I'm bound by that agreement. But somehow we want these magic words that say, oh, by signing this, I'm now confirming that I agree. That doesn't make any sense in a written contract environment. And our cases consistently say there's no differences between. We're just applying contract formation. But we're not. We are applying. I mean, tell me where in any contract formation case outside of the Internet we have a rule, as is explained in Berman, that says you have to be explicitly advised that the act of clicking will constitute assent. Your Honor, sitting here right now, I cannot think of any case. That's because it doesn't exist. That is not a basis of contract formation. Isn't the act of clicking sort of like signing? Well, right. I mean, honestly, and this is what Oberstein mentioned, just make this a click wrap. It's not hard. It's just like signing. Right. And it becomes significant for the individual. Right. And that's one of the points here that Oberstein made at length, which is it's not difficult for defendants to figure this out. Just make it a click wrap. Like where that box is, just have them click on it. You said there were three points, right? And the third one that you had alluded to within the contextual argument or the contextual part of the analysis was the continuing nature. Right. When I looked at Pettit, Pettit said, and to be charged the one-time join fee and monthly membership fee above today and each month until I cancel. Then if you go back and you take a look at McDowell, McDowell says, I understand this membership renews automatically and will continue until I cancel. Well, there was a free membership in Sellers as well. Well, I'm just saying, but what's the membership? So I would urge your Honor, there's four paragraphs in Oberstein that talks about Sellers, and it discusses what Sellers means. And the context in Sellers was paying five bucks, you get a question answered, there's a free trial. What you didn't know was that there was going to be this thing that comes back that auto-renews you and pays. And what Oberstein says is that's different than Oberstein. Oberstein was a guy signing up for Live Nation to buy tickets for events, and he was going to buy those for years and years, right? The person had just answered in Sellers, yes, they signed up for a trial that they thought was a free trial. And the Sellers context is here. So I would urge the Court simply to apply, just look at the four paragraphs in Oberstein that applied Sellers and discuss sort of the nature of the transaction. It's the same exact nature here. So that's the difference. I'm not saying there's no trial here. I'm saying there's a difference between, you know, a free trial and this automatic renewal. The second thing I would mention is – No, I'm just saying that I think that – I guess I didn't make it clear, but I think that the distinction between Pettit and Faust and McDowell that I just pointed out is significant. Well, sorry, and I realize that my reaction made it seem like I was disagreeing. I was describing why I think that the context here matters, and it's like Sellers. But, yes, I agree with Your Honor that there is a distinction between Pettit and those plans based on what Your Honor just said. Well, don't they all say that they continue automatically? I mean, I'm a little tiny type, but they all say that it will continue automatically. I don't believe Davis and Nelson. Well, I mean, yeah, Davis and Nelson says try seven days for $5. It's hard to read. Try seven days for $5 and then, you know, cancel any time. So, I mean, even the ones that are covered by Sellers talk about a trial. I mean, the button says start my trial. It says try seven days, then only $46 a month. I mean, all of these things are about $5. Which is what Sellers says too, then $20 a month. Right, and what Your Honor said, I mean, Judge Boggs wrote the opinion, but what Your Honor said in Oberstein was that that was confusing and that that was not an ongoing relationship because they thought they were signing up for this free trial with one question answered and not this automatic renewal. That's why they sued was because when they found out that they were getting charged. I would also just note that if you want proof positive about how much Sellers is on point here, one of the plaintiffs that sued actually had her claims dismissed because they were covered by the settlement. And the only reason, the only reason the other plaintiffs didn't, was because they weren't covered by the Sellers Class Actual Settlement. Giving you that, again, you've already conceded that Sellers only controls Davis and Nelson. So, we can't, I mean, we still have to grapple with Gidden, Faust, and McDowell. And we can't get out of them on Sellers, as I understand it. Is that right? I agree that Sellers does not control. It does not dictate the result. I think that you have to balance all of these things. And with all due respect, I think that the color is one thing that matters. I'm not saying that it's dispositive. I'm just saying that I can't, I don't think you can discard that and then say the only difference is this one thing. I think when you look at the sum total of the things, that Pettit is different than the other plaintiffs for the reason the district court mentioned. Well, the only thing I can see when the difference is by clicking versus I agree. Your Honor, I just, I mean, all the cases talk about not necessarily the color. It's got a contrast. No, but Pettit didn't have a different color, did it? Yes, blue. That was the one thing that the court looked at. I mean, look at them. Oh, you're right. Yeah, I mean, the two main things that the district court looked at were the blue color. I don't know. I just don't get it. Because if you handed me a document to sign, you don't have to have it in blue. Yeah, but this is online. Your Honor, I mean, with all due respect, this is not a case where I'm handing you a piece of paper contract. These are consumers online who are looking, and when you look online, it doesn't have to be blue. I've been using the Internet since 1994. I think of links as some sort of contrasting color, pink, purple. It was green in Patrick. In Oberstein, it was some other color. Interesting to do, but my sense is you don't have contrasting colors in the majority of these. But I could be wrong. I mean, if so, I don't know why. I mean, I think most links tend to be a contrasting color, and the point is this court has held multiple, multiple times that something contrasting matters because it pops out. And so I just—Your Honor, as the judge, I'm just saying I would balance all of them, and I think that that blue contrasting color does make a difference in context with everything else. I'm not saying that it's a dispositive factor. And again, as this court said in Oberstein, and as the court emphasized in Berman and Sellers mentioned, the defendant has the duty or has the burden. They're the ones that are making these websites. Is it really so much to ask just to have them make it that conspicuous? I mean, it's not difficult. If they made it too conspicuous, people wouldn't click. Let's face it. Yeah, I mean, do you think—I don't want to pay $48 a month for an online service. Yeah, anybody in their right mind wouldn't click that. Right, and that's why we have these automatic renewal laws. Why make it large? Why make it bold? Why do that? Because people won't click. Well, but just to be clear, we're talking about contract formation here. There's a separate issue. I mean, you're saying, oh, I don't want to pay monthly, but, I mean, I think we all know this. I mean, any astute consumer knows that when you sign up for a free trial, it's not free. You better check your credit card statement in 30 days. And I didn't mean to conflate that. Some astute consumers. My mother would disagree with that. Yeah, fair enough. But are we bound by sellers? Because so reasonably conspicuous, we look at our federal cases. Sellers are clearly conspicuous at a higher standard. And what are we bound by? I mean, the standard is applying California state law of contract formation, which is announced by sellers, which is a conspicuous and then unambiguous manifestation of assent. And that has been applied by this court in at least five cases since then. And so, I mean, this court is bound by California law. I mean, with all due respect, if a California court stands up and says internet contracts are not formed unless some crazy thing, I mean, that's the law, and federalism demands that this court apply that. Okay. Just my other final point. You know, it's only by accident that these other plaintiffs weren't even covered by the sellerless settlement because the sellerless class action settlement was limited to California residents who signed up before the end of 2022. So, for example, Davis and Nelson, they would have been, but they're not California residents. And the other California residents here weren't within the time period. And so, frankly, I mean, the only reason we're here is because it's the same case redux. It's just that the settlement didn't cover all those people. Again, Your Honor, I'm happy to answer any further questions. I would just urge the court to, again, apply that holistic analysis that we've always agreed with. The opposing counsel is accused on my side of not believing that. We wholeheartedly believe in that. I would urge the court to do that. If the court wants to emphasize and clear up that contrast is not the most dispositive factor or not the most important, I wouldn't be opposed to that. But I think that the result wouldn't change here, and it certainly won't change for any of those plaintiffs. The two, at least, that were covered by Sellers. You're out of time. Thank you. There's some time left for rebuttal. I'll make a quick few points on rebuttal. First, on Sellers, my friend on the other side points out that they invoke other states' laws for those plaintiffs. That's exactly right. North Carolina, for example, where Davis lives, has material differences. That legislature has chosen a different law. We certainly did. For automatic renewal, for example, in North Carolina, there's no private right of action. There is a good faith defense. Are you talking about automatic renewal differences or contract? Because all we're dealing with is contract forms. Exactly. This is a mill-run contract. That's what the parties agreed was substantially equivalent. I thought the parties all agreed that California applies. Is that wrong? It's ER-12, Judge. They say that they agree because it is materially identical, and that is not true for the automatic renewal provisions. Now, when they are in arbitration, the Californians can argue, and he points out they're not covered by the settlement in Sellers because they're not Californians. Exactly. That's exactly right. The Californians in arbitration can say, we were entitled to this heightened notice that we didn't get, and we'll deal with that in arbitration. Second, the other side relies on blue quite a bit. I'll just point to reply brief, note one, and Kiba, both of which reject the blue thing. And then finally, as to Oberstein, in that case, the court found that the agreement was enforceable, so talking about the recurring nature was unnecessary. I don't want to criticize Judge Boggs, but talking about the recurring nature was unnecessary. Nothing is more recurring than a $46-a-month charge. With that, we urge the court to reverse. Okay. We thank both sides for their argument. The case of Goodin v. Jones-Hams is submitted.
judges: PAEZ, IKUTA, NELSON